UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TEMEKA STROZIER, LATESHA DIXON, JEWEL RENFROE, CRYSTAL PHILLIBERT, PEACHES DESIR, and EBONY BOSWELL,<br><br>Plaintiffs,<br><br>v.<br><br>MELODY MADDOX, in her official capacity as the Sheriff of DeKalb County, Georgia,<br><br>Defendant. | **Civil Action File No.**<br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

COME NOW, Plaintiffs Temeka Strozier ("Ms. Strozier"), LaTesha Dixon ("Ms. Dixon"), Jewel Renfroe ("Ms. Renfroe"), Crystal Phillibert ("Ms. Phillibert"), Peaches Desir ("Ms. Desir"), and Ebony Boswell ("Ms. Boswell") (collectively, "Plaintiffs") and bring this *Complaint* under Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, enforceable by 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this Court because the violations of Plaintiffs' rights alleged herein were committed in this division of this judicial district.

**PARTIES**

3. Plaintiff Temeka Strozier ("Ms. Strozier") is a resident and citizen of the State of Georgia and submits herself to the jurisdiction of this Court. Ms. Strozier is a former employee of Defendant.

4. Plaintiff LaTesha Dixon ("Ms. Dixon") is a resident and citizen of the State of Georgia and submits herself to the jurisdiction of this Court. Ms. Dixon is a former employee of Defendant.

5. Plaintiff Jewel Renfroe ("Ms. Renfroe") is a resident and citizen of the State of Georgia and submits herself to the jurisdiction of this Court. Ms. Renfroe is a former employee of Defendant.

6. Plaintiff Crystal Phillibert ("Ms. Phillibert") is a resident and citizen of the State of Georgia and submits herself to the jurisdiction of this Court. Ms. Phillibert is a former employee of Defendant.

7. Plaintiff Peaches Desir ("Ms. Desir") is a resident and citizen of the State of Georgia and submits herself to the jurisdiction of this Court. Ms. Desir is a current employee of Defendant.

8. Plaintiff Ebony Boswell ("Ms. Boswell") is a resident and citizen of the State

- 3 -

of Georgia and submits herself to the jurisdiction of this Court. Ms. Boswell is a former employee of Defendant.

9. Defendant Melody Maddox ("Maddox") is the elected Sheriff of DeKalb County, Georgia, a constitutional office. She is sued in her official capacity as the alter-ego of the DeKalb County Sherriff's Office (DKSO). She is also sued pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

10. Defendant Maddox may be served with the summons and complaint by personal service upon her or her designee, at the DeKalb County Sheriff's Office, which is located at 4415 Memorial Drive, Decatur, Georgia 30032.

**FACTUAL ALLEGATIONS**

11. Maddox and DKSO have maintained, on a systemic level, a working environment that is sexually hostile to the Plaintiffs and other female staff of the DeKalb County Jail, by acting with deliberate indifference to endemic, well-known sexual harassment of female staff by inmates. Inmates are constantly a threat to female detention officers' safety, and they are not held accountable for their dangerous and harassing behavior.

12. Plaintiffs made numerous attempts to resolve these issues internally in meetings with command staff, which included Captains, Lieutenants, Sergeants, and Sheriff Maddox.

13. During meetings with command staff, Plaintiffs expressed numerous concerns, including inmates constantly "popping out" of cells due to compromised, inmates masturbating within close proximity of female detention officers, and inmates entering communal areas unclothed.

14. The detention officers repeatedly voiced concerns and completed written disciplinary citations regarding out-of-control inmate behavior; however, no corrective action was taken, and the behavior has continued.

15. Ms. Strozier began her employment with DKSO on November 19, 2019, as a detention officer.

16. During Ms. Strozier's employment, she was subjected to an ongoing sexually hostile work environment.

17. Ms. Strozier frequently expressed her concerns to the command staff, including Captains, Lieutenants, Sergeants, and Sheriff Maddox.

18. Specifically, she complained about inmates constantly "popping out" of their cells due to compromised cell door locks, inmates masturbating within proximity of female detention officers, and inmates entering communal areas unclothed.

19. Specifically, Ms. Strozier frequently complained to command staff during roll call meetings.

20. Command staff made no effort to address or stop the reoccurring incidents of harassment and sexual encroachments toward female staff members. In fact, the Command staff refused to make changes suggested by the female employees. For instance, during a roll call meeting, Maddox stated, "we are not going to prioritize fixing the locks."

21. After no action was taken to mitigate these concerns, and following frequent and repeated complaints, on March 25, 2021, Ms. Strozier met with Colonel Patravious Long and again expressed the aforementioned concerns. Colonel Long echoed Maddox in stating that DKSO was not going to prioritize fixing the locks.

22. Despite receiving numerous notifications of the sexually hostile work environment by Plaintiffs, no corrective actions were taken by the command staff. Maddox and DKSO were aware and acquiesced to the hostile work environment.

23. Ms. Strozier completed inmate discipline citations during each shift for inmate violations related to masturbation, insolence towards staff members, destroying government property, indecent exposure, and making sexual proposals or threats. Despite the numerous citations and reports of inmate violations, the misconduct continued daily.

24. On April 16, 2021, while Ms. Strozier worked on level 6 Northeast, inmate Kenneth Niqua Smith ("Mr. Smith") popped out of his cell and masturbated in her view. Ms. Strozier cited Mr. Smith for this incident adding another violation to his already lengthy administrative record of violations.

25. On April 19, 2021, a few days later, Mr. Smith repeated the same violations. Ms. Strozier informed the command staff and requested a warrant be taken out against the inmate. A warrant was never sought against Mr. Smith for his repeated and well-documented sexual misconduct.

26. As a result of the sexually hostile work environment at DKSO, Ms. Strozier resigned on May 7, 2021.

27. Ms. Strozier was subjected to mental anguish during her entire tenure at DKSO. DKSO's failure to protect Ms. Strozier from physical harm caused her to be panic-stricken every time she entered her assigned unit. The above-described unwelcomed sexual misconduct created an unbearable, offensive, and hostile work environment that forced Ms. Strozier to end her career in law enforcement with DKSO.

28. Ms. Dixon began her employment with DKSO on November 18, 2019, as a detention officer.

29. During Ms. Dixon's employment, she was subjected to an ongoing sexually

hostile work environment.

30. Around January 2021, Ms. Dixon and other female detention officers had an in-person meeting with Captain Poole ("Poole") and notified Poole about inmates consistently popping out of their cells, exposing their genitals, and masturbating in the presence of female staff members.

31. The female detention officers notified the command staff repeatedly during numerous roll calls of the unsafe and sexually hostile work environment. Nonetheless, command staff made no efforts to address their concerns, rectify inmate misconduct, or ensure the safety of the female staff members.

32. For instance, during one of the roll call, Ms. Dixon complained that inmates were putting objects into the cell locks, such that the locks were malfunctioning, and inmates were able to pop out of the cells. Maddox falsely claimed that the locks had been cleaned and that inmates would no longer be able to pop out of their cells. However, the locks continued to be ineffective, and inmates continued to pop out of their cells.

33. As a result of the sexually hostile work environment at DKSO, Ms. Dixon resigned on February 17, 2021.

34. The sexually hostile work environment Ms. Dixon endured at DKSO was plagued with psychological fatigue and stress. The inmate culture at DKSO

was out of control, violent and unpredictable each day Ms. Dixon reported for her shift.

35. Ms. Renfroe began her employment with DKSO around December 2018, as a detention officer.

36. During Ms. Renfroe's employment, she was subject to an ongoing sexually hostile work environment.

37. Ms. Renfroe frequently expressed her concerns to the command staff, including Captains, Lieutenants, Sergeants, and Sheriff Maddox.

38. Specifically, she expressed numerous concerns regarding the locks not working and inmate masturbation.

39. During one of the roll call meetings, a command staff member stated, "The locks are not a priority right now. We do not have the money now."

40. On one instance, Ms. Renfroe was alone in the tower while all the inmates on the 7th floor were masturbating simultaneously. Ms. Renfroe had to call Sergeant Smith several times before he answered, and he did not immediately come to her aid.

41. The prolonged response time from the command staff opened the door to a fight or flight situation for female detention officers, which posed significant dangers to the officers and inmates.

42. Ms. Renfroe filed inmate discipline citations for each inmate violation related to masturbation, insolence towards a staff member, jamming locks, indecent exposure, and making sexual proposals or threats. Despite the numerous citations and logs of inmate violations, the misconduct continued daily.

43. As a result of the sexually hostile work environment at DKSO, Ms. Renfroe resigned on November 14, 2020.

44. Ms. Renfroe's stress compounded daily as the command staff took no action to rectify the situation, even though she constantly followed protocol while dealing with high-profile offenders that had control of the jail.

45. Ms. Phillibert began her employment with DKSO in March of 2020, as a security technician.

46. In January 2022, Ms. Phillibert was promoted to detention officer.

47. During Ms. Phillibert's employment, she was subjected to a constant sexually hostile work environment daily.

48. Ms. Phillibert frequently expressed her concerns and was present at meetings in which other DKSO employees expressed their concerns to the command staff, including Captains, Lieutenants, Sergeants, and Sheriff Maddox.

49. Specifically, Ms. Phillibert complained about and observed other employees complain about the locks not working and inmate masturbation.

50. During one of the roll call meetings, a command staff member stated, "The locks are not a priority right now. We do not have the money now."

51. The command staff often diverted the responsibility back to the detention officers, and stated, "clean and scrub the locks." However, the locks are very worn, and the detention officers are forced to remove hardened objects such as toilet paper and plastic forks out of the locks.

52. Additionally, the command staff directed Ms. Phillibert to issue citations; however, security technicians were not issued citation books and they were not allowed to serve inmates with citations.

53. As a security technician, it was against jail policy for Ms. Phillibert to be left alone in the housing units of the jail. Ms. Phillibert was required to always be accompanied by sworn staff. Nonetheless, consistently three to four times a week, Ms. Phillibert was left alone on the floors, and her safety was jeopardized by the inmates' ability to pop out of the cells due to the compromised locks.

54. Ms. Phillibert was subject to inmates forcing her to watch them remove their genitals from uniforms and masturbate while she was working in the tower

as a security technician.

55. When Ms. Phillibert became a detention officer, she continued to be subject to an ongoing sexually hostile work environment daily.

56. The locks remained broken, and inmates were out of their cells and in public areas without authorization.

57. Inmates exposed their genitals at Ms. Phillibert and masturbated in public areas while watching Ms. Phillibert as she performed her required duties.

58. Ms. Phillibert felt unsafe at DKSO and feared for her physical safety daily. She was required to balance demands from the command staff to work in an unsafe environment and sexual misconduct from inmates during each shift.

59. Due to the aforementioned sexually hostile and dangerous environment fostered by DKSO's deliberate indifference, Ms. Phillibert resigned on August 7, 2022.

60. Ms. Desir began her employment with DKSO in October of 2018, as a security technician.

61. Ms. Desir is subject to an ongoing sexually hostile work environment daily.

62. Ms. Desir has expressed her concerns to the command staff during roll call and one-on-one meetings.

63. Specifically, she has complained about the locks not working and inmate masturbation.

64. During one of the roll call meetings, a command staff member stated, "Clean the locks so they will stop jamming and write the inmates up."

65. However, the security technicians are not issued citation books and have no option to write inmate disciplinary citations.

66. Ms. Desir is subject to inmates forcing her to watch them remove their genitals from uniforms and masturbate while she is working in the tower.

67. Ms. Desir constantly feels violated and is forced to stack objects high enough in the tower to avoid being seen by the inmates.

68. Ms. Desir feels unsafe at DKSO, and the mental anguish is exhausting. She must balance demands from the command staff to work in an unsafe environment and sexual misconduct from inmates during each shift.

69. Ms. Boswell began her employment with DKSO on October 22, 2005, as a detention officer.

70. During Ms. Boswell's employment, she was subject to an ongoing sexually hostile work environment.

71. Ms. Boswell frequently expressed her concerns to the command staff, including Captains, Lieutenants, Sergeants, and Sheriff Maddox.

72. Specifically, she complained about the locks not working and inmate masturbation.

73. Additionally, Ms. Boswell complained that inmates were discussing how they were going to rape female officers.

74. During her 16 years of employment at DKSO, Ms. Boswell witnessed inmates masturbate and pop out of cells, jeopardizing her safety.

75. Ms. Boswell was under the leadership of three different sheriffs during her tenure. The sexually hostile work environment was the worst under the current sheriff, Maddox.

76. On one instance, during the summer of 2021, an inmate reached out and attempted to grab Ms. Boswell's vagina.

77. Ms. Boswell followed protocol by notifying Sergeant Davis and Sergeant Friday, and she issued the inmate a citation.

78. Despite this aggressive and sexual act, the inmate was never punished, and Ms. Boswell was subject to constant taunts from the inmate about the lack of punishment.

79. As a result of the sexually hostile work environment at DKSO, Ms. Boswell resigned on September 24, 2021.

80. Ms. Boswell's fear of being assaulted by inmates was a constant fear that

caused an insurmountable amount of stress in her life.

## SUBSTANTIVE CLAIMS

### Count I – Title VII

81. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex. Inclusive of this prohibition is the right to be free from a sexually hostile work environment.

82. Each plaintiff—with the exception of Ms. Renfroe—timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) with respect to their claims under Title VII as outlined herein.

83. As shown above, Defendant violated Plaintiffs' rights under Title VII by allowing Plaintiffs to work in a sexually hostile work environment and not reasonably responding to the same despite adequate notice of the ongoing issues.

84. Defendant is liable for all damages resulting from its violations of Title VII, including economic and compensatory damages, plus attorneys' fees and costs.

### Count II – Equal Protection Clause

85. The Equal Protection Clause prohibits a public employer such as DKSO from maintaining a working environment that is permeated with sexual

hostility, particularly where such hostility is directed toward one particular sex.

86. As shown above, Defendant violated Plaintiffs' constitutional rights by allowing Plaintiffs to work in a sexually hostile work environment.

87. Defendant violated the Equal Protection Clause by allowing female staff, including Plaintiffs, to work in a sexually hostile work environment and denying their right to equal protection of the laws.

88. Defendant is liable for all damages resulting from its violations of the Equal Protection Clause, including economic and compensatory damages, plus attorneys' fees and costs.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a) That a trial by jury be had on all issues for which a jury trial is permitted under law;

b) That injunctive and equitable relief be entered to require Defendant to take reasonable measures to ensure that Plaintiffs and others similarly situated are free of a sexually hostile work environment while employed by Defendant;

c) That damages be awarded against Defendant to compensate the Plaintiffs for the injuries suffered as a consequence of Defendant's

      actions in an amount to be determined by the enlightened conscious of the jury;

d)    That attorney's fees and expenses of litigation be awarded to Plaintiffs;

e)    That pre-judgment and post-judgment interest be awarded; and

f)    That the Court award such other equitable or monetary relief as the Court deems just and proper.

Respectfully submitted on August 19, 2022.

                                            /s/ James Radford
                                            James Radford
                                            Georgia Bar No. 108007
                                            Zachary Panter
                                            Georgia Bar No. 822012
                                            *Counsel for Plaintiff*

Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com
zachary@decaturlegal.com